WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

RICHARD BERNIER,

         Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

         Defendant.

No. 4:24-cv-00002-GMS

**ORDER**

      Seven Motions are pending before the Court: (1) Defendant's Motion for Summary Judgment on Counts II and III of Plaintiff's Complaint (Doc. 36); (2) Defendant's Motion for Summary Judgment on Count IV of Plaintiff's Complaint (Punitive Damages) (Doc 38); (3) Plaintiff's Motion for Partial Summary Judgment to Establish a General Business Practice (Doc. 39); (4) Plaintiff's Motion for Partial Summary Judgment to Establish Bad Faith (Doc. 41); (5) Plaintiff's Motion for Order to Exclude Portions of Defendant's Expert Report (Doc. 51); (6) Plaintiff's Motion to Compel (Doc. 58); and (7) Defendant's Motion for Protective Order (Doc. 79). The Court heard oral argument on the Motions on May 23, 2025.

      For the reasons below, the Court grants in part and denies in part Defendant's Motion for Summary Judgment on Counts II and III of Plaintiff's Complaint (Doc. 36). The Court denies the remaining Motions.

# BACKGROUND

## I. Factual Background

This case arises from a claim made by Bernier under the underinsured motorist ("UIM") coverage provided in his State Farm policy. Bernier was involved in a November 18, 2020 auto accident. He settled the underlying claim for the other driver's limits of coverage and then sought the maximum available UIM coverage under his own policy of $50,000. (Doc. 36 at 3; Doc. 37-3 at 1-2; Doc. 37-5 at 1). State Farm subsequently offered Bernier $31,342.36. (Doc. 37-6 at 2). The offer did not include payment of any amounts for prejudgment interest or Alaska Rule 82 attorney fees. (Doc. 41-7 at 2).

In a telephone conversation on December 29, 2024, State Farm made an offer, including a total of $4,755.10 in prejudgment interest and attorney fees. (Doc. 36 at 5). During the conversation, Bernier advised State Farm that he had already filed suit and was preparing the summons. (*Id.*). Following the conversation, State Farm clarified its offer in a letter to Bernier. (*Id.*). State Farm offered Bernier $50,000—the maximum available UIM coverage under Bernier's policy—but waited to calculate final prejudgment interest and Rule 82 fees, as additional Rule 79 fees related to Berner's lawsuit may have applied. (Doc. 37-13 at 2). Bernier did not respond to State Farm's request for information about Rule 79 costs, and on February 14, 2024, State Farm issued a check payable to "Richard Bernier & Ringstad Law Office, P.C." in the amount of $73,129.25. (Doc. 36-1 at 4). The sum consisted of $50,000 in the face limits of the underinsured motorist coverage, $13,949.32 in prejudgment interest, $8,894.93 in Civil Rule 82 attorney fees, and $275 in Rule 79 costs. (*Id.* at 5).

On November 27, 2024, the Court granted State Farm's Motion for Summary Judgment on Count I (Doc. 33). Thus, Bernier has three remaining claims against State Farm: negligent and reckless claims handling (Count II); violation of covenant of good faith and fair dealing (Count III); and award of punitive damages (Count IV). (Doc. 1-1 at 7-12). Both Bernier and State Farm subsequently filed Motions for Summary Judgment. (Docs. 36, 38, 39, 41). Bernier also filed a Motion for Order to Exclude Portions of

Defendant's Expert Report (Doc. 51). State Farm also filed a Motion to Compel (Doc. 58) and a Motion for Protective Order (Doc. 79).

## MOTIONS FOR SUMMARY JUDGMENT

### I. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc*., 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a material, factual dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). Specifically, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Although the nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968), it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal citation omitted). "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Where the parties file competing motions for summary judgment, "'the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.'" *State Farm Fire and Casualty Co. v. Fairbanks Aero Servs., Inc.*, No. 4:23-cv-00016, 2025 WL 933952, at *3 (D. Alaska Mar. 27, 2025) (quoting *Tulalip Tribes of Wash. V. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015)).

In its analysis, the reviewing court must accept the evidence of the non-moving party as true and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. The court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II. Bernier's Motion for Partial Summary Judgment to Establish a General Business Practice (Doc. 39)

Bernier seeks a Partial Summary Judgment from this Court that State Farm is engaged in a particular established general business practice. (Doc. 39). For the reasons that follow, the Motion is denied.

In the insurance context, "when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.'" *See Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1323-24 (quoting *Gruenberg*, 510 P.2d at 1038). Although the tort of bad faith in first-party insurance cases "may or may not require conduct which is fraudulent or deceptive, it necessarily requires that the insurance company's refusal to honor a claim be made without a reasonable basis." *Id.* at 1324; *see also Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 287 (Alaska 2012).[1]

An insured may establish unreasonable behavior by demonstrating that the insurance company has a general business practice of violating provisions of the Unfair Claims Settlement Practice Act ("UCSPA"), AS § 21.36.125, and its implementing regulations, 3 AAC 26. Although there is no private cause of action for violation of the UCSPA in cases brought by a first-party claimant, in good faith and fair dealing cases, violations of the UCSPA can serve as evidence of bad faith. *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1269 (Alaska 1992) (holding that if State Farm failed to attempt in good faith to comply with provisions of the UCSPA "'with such frequency as to indicate a practice,' such acts might be considered in deciding whether or not State Farm breached its duty of good faith and fair dealing") (quoting AS § 21.36.125); *see also Allen*

---

[1] "Whether the insured must also show some sort of culpable mental state in addition to objective unreasonableness in a bad-faith insurance tort action is a matter left open by [Alaska] case law." *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 n.21 (Alaska 2014).

*v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 1474526, at *5 (D. Alaska 2018) ("Violations of AS 21.36.125 and its implementing regulations could be evidence of bad faith.").

Here, Bernier asserts, as evidence of unreasonable behavior, that State Farm had a general business practice of: (1) not offering prejudgment interest or Rule 82 attorney fees on UM/UIM claims for offers below the policy limits; and (2) reducing medical expenses based on the personal opinion of the claim handler. (Doc. 39 at 1). The Court addresses these alleged business practices, in turn, below.

### 1. Add-Ons in Below-Policy-Limit Settlement Offers

Bernier asks the Court to establish that State Farm had a general business practice of not offering prejudgment interest and Rule 82 attorney fees ("add-ons") on UM/UIM claims for settlement offers below the policy limits. (Doc. 39 at 1).

The UCSPA prohibits insurers from engaging "in a pattern or practice of compelling insureds to litigate for recovery of amounts due under insurance policies by offering substantially less than the amounts ultimately recovered in actions brought by those insureds." AS § 21.36.125(a)(7). Bernier asserts that pre-judgment interest and attorneys' fees were due under his insurance policy, (Doc. 41 at 15-16), and that by not including add-ons in the offers made to him, State Farm forced him to pursue litigation to recover the amount he was due under his policy in violation of the UCSPA. (Doc. 41 at 21-22).

### a. Whether State Farm Was Required to Pay Bernier Add-Ons

Bernier's policy with State Farm provides:

> In addition to the limits of this coverage for bodily injury, we will pay:
> 1. Interest on damages owed to the insured by the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle and accruing before we pay, offer or deposit in court, the amount due under this coverage, but only on that part of the damages which we pay.
> 2. Limited attorney fees taxed or that would be taxed as costs under Rule 82 of the Alaska Rules of Civil Procedure. The most we will pay for attorney fees taxed or that would be taxed as costs against the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle under Rule 82 of the Alaska Rules of Civil Procedure is the amount allowed under

that Rule for a contested case with a judgment equal to the applicable limit of liability of this coverage for bodily injury.

(Doc. 36-2 at 21-22). State Farm argues that this policy language requires State Farm to pay pre-judgment interest and attorneys' fees only "in addition to the limits of this coverage." (Doc. 61 at 15).

But the "limits of this coverage" provided by the policy in any given occurrence does not necessarily equate to the maximum amount that would have to be paid under the policy regardless of the damage to the insured. For example, according to the plain language of the UIM policy, the insurer is obligated to pay only the lesser of "(1) the difference between the amount of the insured's damages for bodily injury, and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury; or (2) the limit shown under 'Bodily Injury Limits – Each Person.'" (Doc. 41-9 at 23). Thus, as is illustrated by the facts of this case, the "limits of the coverage" provided by the policy do not necessarily equate to the maximum payment limit on the policy—the "Bodily Injury Limits."

Here, State Farm initially offered only $31,342.36 as the limits of the coverage provided by the policy, (Doc. 37-6 at 2), which was less than the $50,000 "Bodily Injury Limits." The initial offer was based on $27,199.86 in reasonable bills, $19,142.50 in loss of earnings, $40,000 in general damages, totaling $86,342.36 less the $50,000 liability offset and the $5,000 medical payment coverage offset. (Doc. 37-9 at 2). Although the offer stated that it was "inclusive of Alaska add ons," the explanation of the offer did not include prejudgment interest or Alaska Rule 82 attorney fees. (*Id.*).

Yet, according to the terms of its own policy, State Farm was contractually required to pay prejudgment interest on the coverage amount provided by the policy, even if it was less than "the limit shown under 'Bodily Injury Limits – Each Person.'" (*See* Doc. 36-2 at 23). "In addition to the limits of this coverage for bodily injury we will pay: 1. Interest on damages owed to the insured by the owner or driver of an uninsured motor vehicle . . . and accruing before we pay . . . the amount due under this coverage." (Doc. 36-2 at 21). The

same applies to attorneys' fees.  "In addition to the limits of this coverage for bodily injury, we will pay: 2.  Limited attorney fees taxed or that would be taxed as costs under Rule 82 of the Alaska Rules of Civil Procedure."  (Doc. 36-2 at 22).  It is true that the policy then goes on to limit the amount of attorneys' fees it will pay as the "amount allowed under [Rule 82] for a contested case with a judgment equal to the applicable limit of liability of this coverage for bodily injury."  (Doc. 36-2 at 22).  But nothing about the fact that the policy limits the amount of attorneys' fees that State Farm will pay suggests that State Farm will not pay lesser amounts provided for by Rule 82, especially when the contract provides that "we will pay . . . limited attorney fees taxed or that would be taxed as costs under Rule 82."  (Doc. 36-2 at 22).

Insurance companies have a "duty to tender in settlement that portion of the projected money judgment which [the insurance company] contractually agreed to pay."[2] *Schultz v. Travelers Indem. Co.*, 754 P.2d 265, 267 (Alaska 1988); *see also Guin v. Ha*, 591 P.2d 1281, 1284 (Alaska 1979) ("We shall first examine the insurance contract to determine if it imposes upon the insurer an obligation to pay prejudgment interest in excess of policy limits."); *see also Coughlin*, 69 P.3d at 990 n.16 ("[T]he inclusion of prejudgment interest in policy limits is dependent upon the contractual terms of the insurance policy.").  The contractual provision at issue provides that State Farm will pay prejudgment interest and Rule 82 attorney fees "in addition to the limits of this coverage."  (Doc. 36-2 at 21-22).  Thus. the plain language of the insurance policy here requires State Farm to pay such fees.

### b. Whether Not Offering Add-Ons Constitutes State Farm's General Business Practice

The Alaska Administrative Code, 3 AAC §§ 26.010-300, defines the minimum

---

[2] "An insurance policy is essentially contractual in nature.  Thus, the liability of an insurer and the extent of the loss under a policy of liability or indemnity insurance must be determined, measured, and limited by the terms of the contract." *Guin*, 591 P.2d at 1285. *see also Shultz*, 754 P.2d at 267 (Alaska 1988) ("In determining what constitutes the maximum limits of insurance coverage . . . it is necessary for the court to review the contractual obligations undertaken by the insurer in the insurance policy in question in light of the applicable statutes, regulations and court opinions which have addressed this issue.")

standards for UCSPA claim settlement acts and practices. 3 AAC § 26.010(a). The regulations state that a "[v]iolation of a standard with such frequency as to indicate a general business practice is an unfair or deceptive practice and is prohibited." *Id.* at § 26.010(c). "'[F]requency as to indicate a general business practice' means violation of any one standard committed on one or more percent of claims handled within a 12-month period, or the repeated violation of a single standard without reasonable explanation." *Id.* at § 26.300(6).

As an initial matter, this Court is not bound by the language provided in the UCSPA or the Alaska Administrative Code—language that the Alaska legislature did not intend to create and apply to private causes of action. *See O.K. Lumber Co. Inc*., 759 P.2d at 527. "The statute prohibits acts committed so frequently as to become a trade practice; it does not readily lend itself to enforcement by a private cause of action arising from a single claim." *Id.* The Alaska Supreme Court also noted that the "relatively modest monetary sanctions imposed for statutory violations . . . stand in stark contrast to the potential compensatory and punitive damage awards which would be available in a private damage action." *Id.* Even if this Court gives a jury instruction,[3] adopting the regulations as the legal standard for trial, there is a genuine issue of material fact as to whether State Farm repeatedly violated the UCSPA standard such that it was a "general business practice."

Bernier argues that State Farm's practice of not including add-ons in offers where the limit is below the "Bodily Injury Limit" violates the UCSPA by forcing an insured to sue State Farm to recover the full amount to which the insured is entitled. (Doc. 39 at 6); *see also* AS § 21.36.125(a)(7) ("A person may not . . . engage in a pattern or practice of compelling insureds to litigate for recovery of amounts due under insurance policies by offering substantially less than the amounts ultimately recovered in actions brought by those insureds."). Yet, even if the Court were inclined to adopt the regulatory definition

---

[3] The Alaska Supreme Court found the following jury instruction proper in a case with a first-party claim: "if State Farm failed to attempt in good faith to make prompt and equitable settlement of claims, or compelled insureds to litigate by offering substantially less than the amounts ultimately recovered 'with such frequency as to indicate a practice,' such acts might be considered in deciding whether or not State Farm breached its duty of good faith and fair dealing in this case." *Weiford*, 831 P.2d at 1269.

of "general business practice," Bernier offers insufficient evidence to conclude that State Farm had such a general business practice. First, he fails to offer sufficient evidence to conclude that State Farm makes its insureds sue to recover the benefits to which they are entitled "on one or more percent of claims handled within a 12-month period, or the repeated violation of a single standard without reasonable explanation." 3 ACC § 26.300(6).

Bernier offers testimony from Andrew Stark, State Farm's Team Manager responsible for supervising the handling of Bernier's claim for UIM coverage, and Lorie Nelson, State Farm's Claim Specialist assigned responsibility for handling and evaluating Bernier's UIM claim. (Doc. 39 at 10). Mr. Stark, in his role as Team Manager, managed four to six claim handlers across California, Arizona, and Alaska. (Doc. 39-3 at 16). Mr. Stark was Ms. Nelson's supervisor at the time she oversaw Bernier's claim. (Doc. 36-5 at 8). Mr. Stark testified that he was trained to pay prejudgment interest and Rule 82 attorney fees in Alaska only if the full policy limit was offered. (Doc. 39-3 at 20). He further testified that he expected the claim handlers he managed to follow that same policy. (*Id.*). Mr. Stark stated that insureds are not entitled to recover Rule 82 attorney fees if the claim is valued at less than the policy limits. (*Id.* at 19). Ms. Nelson, when asked whether State Farm will pay interest only for full policy limit settlements, referred back to the language from Bernier's policy—"in addition to the limits of this coverage, we will pay"—and testified that she understood that language to mean State Farm will pay interest only for full-policy-limit settlements. (Doc. 36-5 at 12). Ms. Nelson was otherwise unable to recall what State Farm's policy was regarding Rule 82 attorney fees and prejudgment interest on claims evaluated as below policy limits. (*Id.* at 11). Yet, the testimony of Mr. Stark and Ms. Nelson is not sufficient absent more to determine whether the Defendant was engaged in a "general business practice" pursuant to the regulations. Not only does their testimony remain unclear as to what they mean by "full policy limits," but absent a basis to believe that the practice was as pervasive in Alaska as the regulations require, there is insufficient basis to conclude that it was a general business practice.

Bernier established that State Farm, at least once, failed to include amounts for contracted-for add-ons from its settlement offer that was below the stated maximum policy limit.  Bernier also provided evidence that may establish that at least one manager understood this to be the general policy and instructed his four to six subordinates to abide by this policy.  However, as State Farm argued, "[a]t the very least, there is an issue of fact as to whether [Bernier] was 'forced' to file suit to recover sums that State Farm offered before knowing he had even filed suit."  (Doc. 61 at 14).  Viewing the facts in the light most favorable to State Farm, there is a genuine issue as to whether Bernier, himself, needed to litigate, as State Farm offered to pay full policy limits plus add-ons before State Farm knew Bernier was suing.  *See Anderson*, 477 U.S. at 255.  Further, Bernier provided no evidence to suggest that Bernier, let alone other insureds, have been "forced" to litigate.  Bernier thus failed to carry his initial burden to present a basis for his motion and demonstrate the absence of a genuine dispute of material fact.  *See Celotex*, 477 U.S. at 323.  As such, Bernier's Motion for Partial Summary Judgment to Establish a General Business Practice of not offering prejudgment interest and Rule 82 attorney fees is denied. (Doc. 39).

### 2. Reducing Medical Expenses Based on the Opinion of the Claim Handler

Bernier next argues that State Farm had a general business practice of reducing medical expenses based on the personal opinion of the claim handler.  (Doc. 39 at 1).

Bernier has not presented a sufficient basis for this portion of his Partial Motion for Summary Judgment.  *See Celotex*, 477 U.S. at 323.  Bernier predicates his Motion on two assertions: (1) that the claim adjuster in Bernier's case improperly relied on her personal opinion to reduce his medical expenses and (2) that this improper practice is reflective of State Farm's general business practice.  Even if the Court accepts that the claim adjuster in Bernier's case improperly reduced his medical expenses, Bernier fails to offer sufficient evidence that State Farm has a general business practice of allowing an adjuster to reduce a settlement based on the personal opinion of the claim handler in violation of Alaska

statute.

Bernier offers testimony from Mr. Stark and Ms. Nelson. (Doc. 39 at 12-13). Mr. Stark testified that, at the direction of his manager, he instructed his claim handlers "to reduce medical bills to what they considered to be a reasonable amount when they were evaluating claims." (Doc. 39 at 13; Doc. 39-3 at 20). Ms. Nelson testified that she was instructed to use the reasonable amount of medical expenses to evaluate claims rather than the billed amount and that she relied on her experience and the Medicare fee schedule to determine what was reasonable. (Doc. 39-2 at 25-26). Ms. Nelson also testified that she relied on "[her] experience" to determine whether medical expenses were reasonable. (Doc. 39 at 12; Doc. 39-3 at 1). Specifically, Ms. Nelson stated that she considered whether there were preexisting injuries such that the full amount of the claim was not due to the accident. (Doc. 39-2 at 29). Ms. Nelson explained that she would offer the low range starting point for negotiations because it was during negotiations that she would have her questions about preexisting injuries addressed. (*Id.*). Although Ms. Nelson reduced the medical specials at less than the billed amount in Bernier's case, she could not recall whether she was trained to evaluate claims at less than the billed amount. (*Id.* at 26). Mr. Stark testified that Ms. Nelson made a mistake by considering the medical specials for less than the billed amount. (Doc. 39-3 at 21).

There exists a genuine issue as to what State Farm's general business practices are. Specifically, Bernier failed to establish on what basis claim handlers determine the reasonable amount of medical expenses versus the billed amount and what the general practice of claim negotiation is.

Bernier argues that the reduction of expenses based on the opinions of claim handlers violates Alaska statute only in his second Motion for Partial Summary Judgment, in which he asserts that the practice violates Section 21.36.125(a)(4) of the UCSPA. (Doc. 41 at 29-30). Section § 21.36.125(a)(4) states the following: "A person may not . . . refuse to pay a claim without a reasonable investigation of all of the available information and an explanation of the basis for denial of the claim or for an offer of compromise settlement."

- 11 -

AS § 21.36.125(a)(4). Bernier offers no evidence to demonstrate that, as a general matter, a claim handler who reduces medical expenses based on her personal opinion necessarily fails to engage in "a reasonable investigation of all of the available information." *See id.* As such, Bernier failed to present a basis for his Motion for Partial Summary Judgment to Establish a General Business Practice of reducing medical expenses based on the personal opinion of the claim handler in violation of Alaska statute. (Doc. 39). Accordingly, the Motion is denied.

### III. Bernier's Motion for Partial Summary Judgment to Establish Bad Faith (Doc. 41)

Bernier filed a Motion for Partial Summary Judgment to Establish Bad Faith (Doc. 41). For the reasons herein, the Motion is denied.

"'[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.'" *Hillman*, 855 P.2d at 1324 (quoting *Gruenberg*, 510 P.2d at 1038). As the Court addressed above, whether Bernier may prevail on his bad faith claim at the summary judgment stage hinges on whether State Farm's behavior can be considered "objectively unreasonable under the circumstances." *See Lockwood*, 323 P.3d at 697; *see also Ennen*, 268 P.3d at 287 ("[T]he tort of bad faith requires that the insurance company's refusal to honor a claim be made without a reasonable basis.").

Bernier asserts the following as evidence that State Farm breached its duty of good faith and fair dealing: (1) State Farm, without a reasonable basis, discounted incurred medicals and excluded damages in violation of AS § 21.36.125(a)(6) and (8), (Doc. 41 at 14); (2) State Farm did not include Alaska add-ons in its offer in violation of AS § 21.36.125(a)(7), (*Id.* at 15); (3) State Farm reduced Bernier's medical expenses based on the possibility of a preexisting condition without any compelling evidence, (*Id.* at 23); (4) State Farm did not use competent evidence to support its reduction of Bernier's medical expenses, (*Id.* at 25); (5) State Farm did not complete the evaluation of Bernier's claim in violation of AS § 21.36.125(a)(4), (*Id.* at 27); (6) State Farm rejected Bernier's settlement

offer, (*Id.* at 30); (7) State Farm evaluated Bernier's claim for the purpose of negotiation rather than to ensure that Bernier received the amount he was entitled to recover from the tortfeasor, (*Id.* at 32); (8) State Farm misrepresented that its December 29, 2023 offer was a full policy limits offer and that the offer was for the full authority granted in violation of AS § 21.36.125(a)(1) and 3 AAC 26.060, (*Id.* at 34); and (9) State Farm deducted the amount it paid in medical payment coverage from the December 29, 2023 offer, (*Id.* at 36).

It is true that State Farm's claim adjuster, Ms. Nelson, testified that she had no specific training in how to reduce medical expenses, nor consulted anyone else to help, but instead reduced billed medical expenses in Bernier's case based on her personal experience. (Doc. 39-2 at 23-24). Bernier offered some examples of her reductions which may not be problematic, and others which appear to be more likely problematic. *See Weiford*, 831 P.2d at 1268 (concluding that, given the sequence of events, "the $5000 offer might support a fact finder's conclusion that State Farm was guilty of bad faith"). Nevertheless, in his motion, Bernier never provides the basis, based in the policy, Alaska law, or otherwise, on which he asserts that her reductions amount to bad faith as a matter of Alaska law.

Regarding Bernier's allegations that State Farm did not include Alaska add-ons in its offer in violation of AS § 21.36.125(a)(7), a reasonable jury may conclude that State Farm's belief that its policy did not, in fact, require payment of add-ons unless an offer was made for the full "Bodily Injury Limits" was not unreasonable. *See KICC-Alcan Gen., Joint Venture*, 242 F.Supp.3d at 880 (finding the insurer's "position that there could not be coverage for claims such as the Superior Group's was objectively reasonable, even if the Court has found it to have been incorrect").

Finally, as addressed above, no private cause of action exists for violations of the UCSPA and its associated regulations. The Alaska Supreme Court has found violations of the UCSPA and its associated regulations to be evidence of bad faith where the Plaintiff demonstrates the insurance company acts in violation "with such frequency as to indicate a practice." *See Weiford*, 831 P.2d at 1269. Bernier did not plead sufficient facts to

demonstrate that State Farm's alleged violations are general business practices. As such, summary judgment in Bernier's favor cannot be granted on those grounds, and whether the individual acts are "objectively unreasonable" is a genuine issue of material fact.

Accordingly, there is a genuine issue of material fact on the question of whether State Farm lacked a reasonable basis for initially reducing Bernier's claim for full policy limits. As such, Bernier's Partial Motion for Summary Judgment to Establish Bad Faith (Doc. 41) is denied.

## IV. State Farm's Motion for Summary Judgment on Count's II and III of Plaintiff's Complaint (Doc. 36)

### a. Violation of Covenant of Good Faith and Fair Dealing (Count III)

State Farm filed a Motion for Summary Judgement on Count III for the violation of good faith and fair dealing. For the reasons herein, the Motion is denied.

Although the Alaska Supreme Court has not defined the elements of the tort of bad faith, *Lockwood*, 323 P.3d at 697, it has made clear that "where the insurer establishes that no reasonable jury could regard its conduct as unreasonable, the question of bad faith need not and should not be submitted to the jury." *Hillman*, 855 P.2d at 1325. State Farm has not demonstrated that "no reasonable jury could regard its conduct as unreasonable." *See id.*

As an initial matter, State Farm suggests that the Alaska Supreme Court approves of requiring malice or ill will on the part of the insurance company to prevail on a bad faith tort claim. (Doc. 36 at 9). To support this proposition, State Farm relies on *Nicholson*, 777 P.2d at 1154 n.3, in which the Alaska Supreme Court upheld a verdict when jury instructions had been given that included language requiring the insurer have a dishonest purpose or reckless indifference.[4] The Alaska Supreme Court on review, however, held only that "the trial court did not err in instructing the jury that an insurer's bad faith failure

_____

[4] The jury instruction stated, in relevant part: "Bad faith does not mean bad judgment or negligence, but means having a dishonest purpose through some motive of self-interest or ill will, or having maliciousness or hostile feelings towards its insureds, or acting with reckless indifference to the interests or rights of its insureds." *See Nicholson*, 777 P.2d at 1154 n.3.

to settle a first-party claim is a tort." *Id.* at 1157. The *Nicholson* Court did not comment on the language of the instruction, and more recent precedent clarifies that the Alaska Supreme Court has not committed to more than requiring "the insurance company's refusal to honor a claim be made without a reasonable basis" to prevail on a bad faith tort claim in the insurance context. *See Ennen*, 268 P.3d at 187.

State Farm argues that, as a matter of law, its investigation and evaluation of Bernier's insurance claim do not support a claim of "bad faith." (Doc. 36 at 14). State Farm points to its prompt evaluation and resolution of Bernier's claim—Bernier's UIM claim was ripe July 27, 2023, and State Farm extended its initial offer to Bernier on August 8, 2023. (Doc. 37-4; Doc. 37-6 at 2). State Farm asserts that although Bernier did not agree with the amount of the initial offer, that fact does not support a conclusion that State Farm acted unreasonably. (Doc. 36 at 14). However, State Farm failed to include the contracted-for prejudgment interest and attorney fees in its initial offer to Bernier. (Doc. 37-6 at 2). Further, whether State Farm excludes contracted-for add-ons as a general business practice, such that it may be evidence of bad faith, is a genuine issue for trial. *See Shaw v. State Farm Mut. Auto. Ins. Co.*, No. 3:16-cv-00575, 2017 WL 4127981, at *5 (D. Nev. Sept. 18, 2017) (finding that a failure to offer contracted-for non-economic damages where the incident results in some pain and suffering could result in a finding of bad faith). Bernier provided testimony from State Farm's claim adjustor and a State Farm manager, who both stated that State Farm is not required to offer add-ons in below-policy-limit settlement offers. (Doc. 39-3 at 20; Doc. 36-5 at 10). Viewing the evidence in the light most favorable to Bernier, a reasonable jury could find that State Farm does have a business practice of excluding contracted-for add-ons in below-limit settlement offers.

Further, Bernier provided sufficient evidence to establish a genuine issue of material fact as to whether State Farm's evaluation and consequent reduction of Bernier's medical expenses was reasonable. Bernier's expert, Mr. Strzelec, concluded that State Farm "arbitrarily reduced/discounted [medical bills] based on speculation and conjecture by the claim handler." (Doc. 51-3 at 32). Specifically, Mr. Strzelec pointed to testimony from

the claim handler that, although she did not have much information about Bernier's medical priors to evaluate the question of causation, she reduced the billed medical costs fifty percent "for negotiating purposes." (Doc. 51-3 at 22). Further, the State Farm manager overseeing the claim adjustor assigned to Bernier's case, Mr. Stark, testified that the claim adjuster should have considered the medical specials at the billed amount and that the claim adjustor made a mistake in handling the claim. (Doc. 65-1 at 9). However, State Farm's expert, Ms. Moore, wrote that Bernier's medical bills "should have been questioned . . . [because] there was no airbag deployment, only slight injuries were noted," and Ms. Moore saw "no physician report tying Mr. Bernier's rotator cuff tear, ulnar nerve injury, or cervical disc disease to the accident." (Doc. 50-1 at 11). Ms. Nelson testified that, when she had questions about preexisting injuries, she would offer an amount at the low range so that her questions about the preexisting injuries could be answered during negotiations. (Doc. 39-2 at 29). "The experts hired by both sides for this litigation disagree as to whether [the claim adjustor's reduction of Bernier's medical bills] was defensible, creating a genuine issue of material fact." *See Goodman v. City of Los Angeles Police Dept.*, 708 Fed. App'x 888, 891 (9th Cir. 2017).

Because Bernier sufficiently raised a factual question as to whether, taking State Farm's actions as a whole, State Farm's denial of Bernier's claim lacked a reasonable basis, State Farm's Motion for Summary Judgment (Doc. 36) as to Count III is denied.

### b. Negligent and Reckless Claims Handling (Count II)

State Farm filed a Motion for Summary Judgment on Count II for negligent and reckless claims handling. (Doc. 36). The parties failed to address Count II in their respective briefing. However, the Court grants summary judgment on Count II because Plaintiff does not state a cognizable claim as a matter of law. *See Allen v. Lowe's Home Centers, LLC*, No. 21-55836, 2022 WL 1599273, at *2 (9th Cir. 2022) ("Because Lowe's did not owe Allen a duty of care as a matter of law, the district court correctly granted summary judgment on that basis.").

Alaska courts do not recognize the existence of a negligence tort action against an

insurer in a first-party insurance context.[5]  "[W]hile an insurer may be held liable for torts independent from its contractual duties, such as fraud, an action for negligence in breaching a specific contractual duty sounds in contract." *Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936, 946 (Alaska 1990).  The Alaska Supreme Court "decline[d] to hold that where a party breaches a contractual promise 'negligently,' such conduct may form the basis for a tort action." *Id.*; *affirmed in Ass'n of Vill. Council Presidents Reg'l Hous. Auth. v. Mael*, 507 P.3d 963, 974 (Alaska 2022) (holding that the "contractual duties at issue in *Alaska Pacific*—to provide insurance coverage and to defend the insured in litigation—have no analog in a 'general duty of care'" and must be enforced by an action on the contract). "Only where the duty breached is one imposed by law, such as a traditional tort law duty furthering social policy, may an action between contracting parties sound in tort." *Alaska Pac. Assurance Co.*, 794 P.2d at 946.  The allegations underlying Bernier's negligent and reckless claims handing cause of action are that "coverage was 'negligently' denied, and that the denial resulted from a 'negligent' investigation [], sound in contract," not tort.  *Id.* Because State Farm did not owe Bernier a general duty of care under tort law, State Farm's Motion for Summary Judgment (Doc. 36) is granted as to Count II.

### V.  State Farm's Motion for Summary Judgment on Count IV of Plaintiff's Complaint (Punitive Damages) (Doc. 38)

State Farm filed a Motion for Summary Judgment on Count IV of Plaintiff's Complaint (Punitive Damages).  (Doc. 38).  For the reasons herein, the Motion is denied.

"To support punitive damages under Alaska law, a plaintiff must prove by clear and convincing evidence that the wrongdoer's conduct 'was outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another person.'" *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1246 (9th Cir. 1998).  "Malice need not be express, but

---

[5] "The tort of negligent adjustment is an independent cause of action that may be separate from a claim based on the insurance contract . . ." *Allstate Ins. Co. v. Kenick*, 435 P.3d 938, 946 (Alaska 2019); *see also C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000) (holding that "the insurer's salaried insurance adjuster owes the insureds the [duty enforceable in a tort action against the employee personally to exercise reasonable care in connection with claims by the insureds that are assigned to the employee for investigation]").

may be inferred from acts evidencing a callous disregard for the rights of others." *Alyeska Pipeline Service Co. v. O'Kelley*, 645 P.2d 767, 774 (Alaska 1982).

Bernier's primary argument in support of punitive damages is that State Farm violated its duty of good faith and fair dealing by mishandling Bernier's claim, that State Farm has a pattern and practice of mishandling claims, and that this demonstrates a reckless disregard for the interest of its insureds, including Bernier. (Doc. 64 at 5-6). Bernier sufficiently established the existence of a material, factual dispute as to whether State Farm acted in bad faith and had a general business practice of not paying contracted-for add-ons. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. Whether malice can by inferred from State Farm's actions is a question for the jury. *See Gov. Emps. Ins. Co. v. Gonzalez*, 403 P.3d 1153, 1164 (Alaska 2017) (awarding punitive damages where GEICO failed to disclose coverage to at least 15 other insureds around the time plaintiff's claim was pending, demonstrating "GEICO's conduct was repeated, rather than isolated, indicating some reprehensibility").

During oral argument on May 23, 2025, counsel for State Farm argued that Bernier has not met the clear and convincing evidence standard under Alaska law for punitive damages. However, counsel for State Farm admitted that Bernier's policy with State Farm provides for payments for both attorney fees and for prejudgment interest in cases that are below policy limits and where coverage amounts are due. Further, a jury may find that State Farm had a general business practice of forcing insureds to litigate to receive the full benefit of their policies or a general business practice of refusing to pay a claim without a reasonable investigation. This may be "sufficiently outrageous to warrant an award of punitive damages." *Contra Weiford*, 831 P.2d at 1266-67 (denying punitive damages where a State Farm supervisor's offer of a lower award because "the insured ha[d] more to lose by going to arbitration" evidenced bad faith but State Farm's conduct overall was not outrageous). Counsel for State Farm argues that the facts of this case are analogous to *Allen v. State Farm*, in which the court held that, although there was a genuine issue as to whether State Farm reasonably handled the UIM claim, "no reasonable jury could find that

defendants acted outrageously or in reckless disregard for plaintiff's interests." *See* 2018 WL 1474526, at *7.  In *Allen*, the plaintiff's evidence that State Farm unreasonably handled his UIM claim was mostly in the form of expert testimony. *Id.* at *6.  The expert testified that the investigation was not timely and that it was done with a predisposition towards denial, which is never appropriate. *Id.*  Here, too, there are genuine issues about how State Farm handled Bernier's claim.  However, on top of the alleged bad-faith handling of Bernier's claim, there are genuine issues as to whether State Farm had a general business practice of not offering to pay elements of its coverage obligations and a practice of improperly reducing medical expenses.  Whether this conduct is sufficiently outrageous to warrant an award of punitive damages is a question for a jury.

State Farm bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323.  Because State Farm failed to demonstrate that no reasonable jury can find State Farm acted with "reckless indifference to the interests of [its insureds]," *see Ace*, 139 F.3d at 1246, State Farm's Motion for Summary Judgment on Count IV (Doc. 38) for punitive damages is denied.

## REMAINING PENDING MOTIONS

## VI.  Bernier's Motion to Exclude (Doc. 51)

Bernier filed a Motion to Exclude (Doc. 51).  For the reasons herein, the Motion is denied.

### a.  Legal Standard

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Meza v. Wacker Neuson Sales Americas LLC*, No. 2:18-cv-0574, 2019 WL 2417396, at *3 (D. Ariz. June 10, 2019) (quoting *Huawei Techs., Co. Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F.Supp.3d 934, 996 (N.D. Cal. 2018).  Generally, rebuttal evidence "is intended solely to contradict or rebut evidence on the same subject matter identified by [another party]" in its expert disclosures. Fed. R. Civ. P. 26(a)(2)(C)(ii); *see also Baker v. SeaWorld Ent., Inc.*, 423 F.Supp.3d 878,

896 (S.D. Cal. 2019). Although this limitation prevents expert rebuttal from exploring new areas not raised in initial reports, "nothing about Rule 26 or the nature of rebuttal prohibits offering independent opinions or utilizing other methodologies." *TCL Commc'ns Tech. Holdings Ltd.*, 2016 WL 7042085, at *4; *see also Kirola v. City and Cnty. of S.F.*, No. C-07-3685, 2010 WL 373817, at *2 (N.D. Cal. Jan. 29, 2010) ("As a general matter, courts have permitted additional data to be used in a rebuttal report so long as it is of the same subject matter.").

### b. Discussion

Bernier filed and served his expert report of Stephen Strzelec on December 13, 2024, (Doc. 34), and on January 7, 2025, State Farm filed its rebuttal expert report of JoAnna Moore "on issues relating to claim handling and specifically with regard to Stephen Strzelec's report." (Doc. 30 at 2; Doc. 50). Bernier asserts that the eight numbered paragraphs in Ms. Moore's report are a valid rebuttal but that the last two and a half pages are "an attempt to testify in Defendant's case-in-chief" and should be excluded. (Doc. 52 at 2).

The topics in Ms. Moore's report are valid rebuttals of Mr. Strzelec's report. Mr. Strzelec lays out what he asserts are claims-handling principals and standards, (Doc. 51-2 at 4-7), and analyzes State Farm's handling of Bernier's first-party underinsured motorist claim. (*Id.* at 8-31; Doc. 51-3). For example, Mr. Strzelec lists all the UCSPA standards for insurance companies and asserts that, on top of the standards set in statutes and regulations, "internal standards of fairness by the insurer" help define the parameters required for every specific situation. (Doc. 51-2 at 5, 9-13). In response to Mr. Strzelec's assertions regarding standards for insurance companies, Ms. Moore detailed what she asserts is the "standard for claim handling." (Doc. 50-1 at 12). First, Ms. Moore summarizes what she argues is the applicable "reasonableness, not perfection" standard, (*Id.*), and then she lists what she asserts, based on her experience, are "the reasonable and industry-accepted claims practices." (*Id.* at 12-13). This evidence is proper rebuttal evidence, as Ms. Moore addresses insurance company standards and practices, which is the

same subject matter as the opinions in Mr. Strzelec's report. *See TCL Commc'ns Tech. Holdings Ltd.*, 2016 WL 7042085, at *7 (declining to strike a portion of a report because the opinions related to the same subject matter as the opinions of the initial report).

Further, as Bernier points out, Ms. Moore's report provides "[a] list of things that Ms. Moore believes Defendant did correctly," as well as her "personal opinion on whether Defendant acted reasonably." (Doc. 52 at 5). These topics are on the same subject matter as the testimony of Mr. Strzelec in his expert report. In fact, Mr. Strzelec stated at the top of his "analysis and discussion" section that he was asked to "provide [his] opinions regarding State Farm's handling of the first party underinsured motorist claims." (Doc. 51-2 at 8). Mr. Strzelec concluded that "State Farm failed to meet minimum industry standards for handling claims," (*Id.* at 13), and provided a detailed assessment of State Farm's actions in handling Bernier's claim, commenting on the various actions that Mr. Strzelec believed fell short of State Farm's obligations. (*Id.* at 26, 29; Doc. 51-3 at 9, 30-32). As a direct rebuttal to this testimony, Ms. Moore listed the actions she argues demonstrate State Farm complied with industry standards, such as reviewing and utilizing contract language, seeking input from supervisory personnel, and providing appropriate claim note documentation. (Doc. 51-4 at 7).

Ms. Moore's rebuttal expert report does not merely opine on the same general subject matter as Mr. Strzelec's report. Instead, Ms. Moore's rebuttal expert report properly rebuts and contradicts Mr. Strzelec's expert testimony. *See Tubio*, 2024 WL 1191051, at *3. As such, Bernier's Motion to Exclude is denied. This does not mean, however, that the Court will necessarily find the report admissible if it is offered at trial.

## VII. Bernier's Motion to Compel (Doc. 58)

Bernier filed a Motion to Compel. (Doc. 58). The Motion is denied.

The parties were aware of the deadlines, as both parties filed Motions for Summary Judgment on December 20, 2024, the deadline for dispositive motions. Bernier had ample time to file a motion to amend the scheduling order or to file a motion to extend discovery, and Bernier did not do so. *See Cobler v. United States*, No. CV-19-00348, 2022 WL

625704, at *1 (D. Ariz. Feb. 25, 2022) ("It is the parties' responsibility to move for extensions of the deadlines set forth in the Court's Scheduling Orders and to establish good cause for any requested extensions."). The Court will not, now, extend discovery after both parties have filed dispositive motions because Bernier did not diligently prosecute his case. *See Stone Brewing Co., LLC v. Millercoors LLC*, No. 18cv331, 2020 WL 1905342, at *4 (S.D. Cal. April 17, 2020) ("Because the Court finds that Plaintiff did not diligently seek Andrews' compliance before the fact discovery deadline and failed to obtain the Court's permission to pursue Andrews' compliance after fact discovery ended, any discovery motion arising from Andrews' production is untimely."); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) ("We decline to limit the district court's ability to control its docket by enforcing a discovery termination date, even in the face of requested supplemental discovery that might have revealed highly probative evidence, when the plaintiff's prior discovery efforts were not diligent.).

Accordingly, Bernier's Motion to Compel (Doc. 58) is denied.

**VIII.  State Farm's Motion for Protective Order (Doc. 79)**

State Farm filed a Motion for Protective Order.  (Doc. 79).  For the reasons herein, the Motion is denied.

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.–N.D. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999).  Rule 26(c) authorizes the Court "to override this presumption where 'good cause' is shown." *Id.* (quoting Fed. R. Civ. P. 26(c)).  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).  The party seeking protection must make "a particularized showing of good cause with respect to [each] individual document." *San Jose Mercury News*, 187 F.3d at

1103.

Here, State Farm has not made a preliminary showing of good cause. State Farm places no limitations on what evidence is confidential other than stating "designation shall comply with the standards set forth in Federal Civil Rule 26(g) when designating information." (Doc. 79-1 at 3). State Farm asserts, generally, that entry of a protective order is necessary "to protect certain confidential and proprietary documents that are responsive to plaintiff's requests for production." (Doc. 79 at 1). State Farm must offer more than a general declaration "that documents sought by Plaintiffs might reveal confidential information that could cause it harm." *Gann v. Gen. Motors LLC*, No. CV-22-00080, 2022 WL 3552484, at *4 (D. Ariz. Aug. 18. 2022); *see also Rose*, 2021 WL 5084277, at *3 ("Defendant's 'confidential business information' [category] is too generalized and vague to qualify for a protective order . . . Defendant must make a more particularized showing of the documents or information to be protected and the reason why such information would qualify for protection."). "[T]he parties are free to enter into any private discovery contract they choose[; h]owever, if they want a Court Order, they must meet the stringent standards for being entitled to a protective order under Rule 26." *Madluvv LLC v. Brow Trio LLC*, No. CV-21-01683, 2022 WL 2018513, at *2 (D. Ariz. May 10, 2022).

Because State Farm did not make a preliminary showing of good cause, State Farm's Motion for Protective Order (Doc. 79) is denied.

## CONCLUSION

The parties are not permitted to file additional dispositive motions in advance of trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment on Counts II and III of Plaintiff's Complaint (Doc. 36) is **granted** as to Count II and **denied** as to Count III.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Count IV of Plaintiff's Complaint (Punitive Damages) (Doc. 38) is **denied**.

1    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary

2 Judgment to Establish a General Business Practice (Doc. 39) is **denied**.

3    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary

4 Judgment to Establish Bad Faith (Doc. 41) is **denied**.

5    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Portions of

6 Defendant's Expert Report (Doc. 51) is **denied**.

7    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (Doc. 58) is

8 **denied**.

9    **IT IS FURTHER ORDERED** that Defendant's Motion for Protective Order (Doc.

10 79) is **denied**.

11    Dated this 28th day of May, 2025.

12

13

14            G. Murray Snow

            Senior United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -